O/JS-6

Stayed

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG E. HARRISON ) | CASE NO. SACV 09-0935 DOC (MLGx) |
| ) | |
| PLAINTIFF(S), ) | ORDER STAYING CASE IN ITS |
| ) | ENTIRETY |
| V. ) | |
| ) | |
| ) | |
| THE CAPITAL GROUP COMPANIES, ) | |
| INC., SUSAN SHERWOOD, AND ) | |
| JOHN PHELAN COMPANY ) | |
| ) | |
| Defendant(s). ) | |
| ) | |
| _____ ) | |

Before the Court are the following motions: (1) Defendant The Capital Group Companies, Inc.'s ("CGC") Motion to Dismiss or, in the Alternative, Stay Plaintiff's Complaint, and/or to Strike Portions of Plaintiff's Complaint (the "CGC Motion"); (2) Defendant John Phelan's ("Phelan") Motion to Dismiss or, in the Alternative, Stay Plaintiff's Complaint, and/or to Strike Portions of Plaintiff's Complaint (the"Phelan Motion"); and (3) Defendant Susan Sherwood's ("Sherwood") Motion to Dismiss Plaintiffs's Complaint or, in the Alternative, to Quash Service of Process of Summons and Complaint (the "Sherwood Motion").  The Court finds the matters appropriate for decision without oral argument. FED. R. CIV. P. 78; LOCAL R.

7-15.  After considering the moving, opposing, and replying papers, the Court hereby GRANTS the CGC and Phelan Motions and STAYS this matter in its entirety.  Deciding to stay this matter, the Court abstains from ruling on the Sherwood Motion and hereby holds it in abeyance.

**I.     BACKGROUND**

Plaintiff Craig E. Harrison ("Harrison") filed the instant federal suit on August 12, 2009, against Defendants CGC, Phelan, and Sherwood.  However, this is not the first litigation between the parties.  There is no dispute that Harrison worked for CGC as a computer consultant and on an independent contractor basis from approximately February to October 2003.  More specifically, Harrison directly worked for a consulting company, MPAQ Systems, Inc., that entered into a contract with Surrex Solutions Corporation ("Surrex").  Surrex then had a contract with CGC and through Surrex, Harrison secured the position with CGC.  In addition, Sherwood was Harrison's supervisor during his tenure at CGC.

As alleged by Harrison, CGC purportedly terminated his services a few days after he reported abuses he suffered at the hands of a CGC employee.  On October 24, 2003, Sherwood informed Robert Bishop ("Bishop") at Surrex that CGC would no longer be needing Harrison's services.  In communicating the termination, Harrison alleges that "Sherwood told Bishop that Plaintiff's contract was terminated because he was not 'truthful,' 'was not getting along with team members,' had 'bad-mouthed' [CGC employees], and was not taking accountability for some of the issues during [CGC's] testing of the RAMS computer system."  Compl., ¶ 17.  The next day, on October 25, 2003, Bishop called Harrison to inform him that he would no longer be needed at CGC, though Harrison contends that Bishop did not disclose the (allegedly) defamatory comments made by Sherwood.

On October 31, 2003, Harrison filed his first civil complaint with respect to these events, alleging that "Defendant's representative Susan Sherwood intimated [sic], and threatened [him] with unjust harm to reputation."  Compl., ¶ 107 and Exh. 154 attached thereto (at ¶ 13).  That action was voluntarily dismissed on May 21, 2004.  On July 25, 2005, Harrison filed a second civil complaint alleging seven causes of action against CGC, Sherwood, and another CGC employee.  At the hearing on all three defendants' motions for summary judgment, the trial court

1  also heard Harrison's motion for leave to amend the complaint in order to insert a defamation
2  cause of action.  On September 26, 2006, the trial court denied the motion for leave to amend
3  and granted all three defendants' motions for summary judgment.  Harrison appealed all orders,
4  and the state appellate court ultimately affirmed.

     Then, on January 12, 2007, Harrison filed his third civil complaint against CGC and Sherwood for defamation, based on the October 24, 2003 comments allegedly made by Sherwood to Bishop.  During that proceeding, Harrison sought to depose Phelan, a high level executive in CGC, who Harrison claims approved the decision to discontinue Harrison's tenure at CGC (and who also was not a named defendant in that case), but Defendants sought a protective order on December 10, 2007, that presiding Judge Dennis S. Choate ultimately granted. On January 24, 2008, Judge Choate further granted summary judgment for CGC and Sherwood.  In the order granting summary judgment, Judge Choate states, "[t]here is no triable issue of material fact that [Harrison's single claim for defamation] is barred by the statute of limitations, and there is no tolling of the statute."  Compl., ¶ 25.  On March 10, 2008, Harrison filed a motion for a new trial, contending that summary judgment was not justified due to errors of law, insufficient evidence presented, and other irregularities in the proceeding.  In addition, on April 16, 2008, Harrison filed a motion to disqualify Judge Choate, claiming that Judge Choate is an "admitted defamer."  Exh. 4 to Compl. at ¶ 53.  Judge Choate resigned from the bench before resolving the motions, and the matter was reassigned to Judge Peter Polos who ultimately denied the motion for new trial.  The briefing on the motion for a new trial also included allegations that Judge Choate was properly disqualified from the proceeding and thus all his rulings were void.

     On May 21, 2008, Harrison appealed the state court judgment on his third civil complaint.  Harrison's appeal currently pending before the state appellate court raises the following issues:

         A.    Whether the summary judgment for Respondent should be reversed, and Harrison allowed a jury trial on his Defamation Action, based on Respondents' failure to meet their burden,

3

imposed by CCP §437c(p)(2), to show that Harrison's defamation cause of action has no merit.

B. Whether the summary judgment should be reversed , and Harrison allowed a jury trial on his Defamation Action, based on Respondents' failure to meet their burden, imposed by CCP §437c(p)(2), to show that the statute of limitations is a complete defense to Harrison's defamation cause of action.

C. Whether the Trial Court's decision to grant Respondents' motion for protective order to prohibit Harrison from deposing John Phelan, the Capital executive who made the decision to terminate Harrrison's contract, substantially prejudiced Harrison.

D. Whether the Trial Court violated CCP §437c(h) by rejecting Harrison's request for a continuance to obtain material information in support of his opposition, including the depositions of key witnesses regarding Respondents' defamation.

E. Whether all orders made and executed by a disqualified judge, including (1) the order granting Respondents' motion for a protective order and sanctioning Harrison for opposing it, (2) the ruling denying Harrison's request for a continuance pursuant to CCP §437c(h), (3) the order granting Respondent's summary judgment motion, and (4) the summary judgment based on these orders and rulings, should be vacated.

F. Whether the order denying Harrison's new trial motion should be reversed because the summary judgment ruling and order, as well as the protective order precluding Harrison from deposing a material witness to the defamation, made by a disqualified judge, constituted an "irregularity in the proceedings of the court" pursuant to CCP §657(1).

G. Whether the order denying Harrison's new trial motion should be reversed because the summary judgment was based on errors of law (CCP §657(7)) and was against established law. CCP §657(6).

       H.      Whether the order denying Harrison's new trial motion should be reversed because newly discovered evidence material to the Defamation Action required a new trial.  CCP §657(4).

       I.      Whether the order denying Harrison's new trial motion should be reversed because Respondents' evidence in support of their summary judgment motion was insufficient to show that Harrison cannot establish one or more of the elements of his Defamation Action, or that Respondents have a complete defense.  CCP §657(6).

Request for Judicial Notice in Supp. of Def. CGC's Mot. ("RJN"), Exh. M (Appellant's Opening Brief) at 655-58.[1]

      As the relevant dates demonstrate, Harrison filed the instant federal complaint after seeking appellate review in the state court system and while that appeal is still pending.  The parties agree that full briefing has been completed and submitted to the appellate court but oral argument has yet to take place.  By the instant federal complaint, Harrison fashions five causes of action: (1) Equitable Doctrine - Extrinsic Fraud i.e. "Collateral Fraud"; (2) Equitable Doctrine - Fraud Upon The Court; (3) Common Count - "Abuse of Process"; (4) Common Count - Defamation; and (5) Count Five - Attorney's Fee and Cost.

      As to Claim 1, Harrison claims that Defendant CGC and Sherwood made fraudulent misrepresentations to Judge Polos during the new trial hearing.  Specifically, he contends that even though he included a request to set aside all of Judge Choate's rulings by his new trial motion and such a request was included in his briefing, Defendants lied to Judge Polos by representing that Harrison made no such request.  Admitting that such a request was in the briefing he submitted to Judge Polos, Harrison further alleges that Judge Polos must not have read the briefing which is why he was seemingly misguided by Defendants.  As to Claim 2, as far as this Court can tell, Harrison basically repeats Claim 1.  By Claim 3, Harrison claims that by seeking a protective order in state court as to the deposition of Phelan, Phelan and CGC

---

[1] No party contests that this Court can take judicial notice of the state appellate brief quoted above.

1  engaged in an abuse of process that prejudiced Harrison in the presentation of his case.  By
2  Claim 4, Harrison basically repeats his defamation claims against CGC and Sherwood with
3  respect to the October 24, 2003 conversation, argues that the statute of limitation is tolled,
4  contends that the defamations are being republished, and argues that claim and issue preclusion
5  do not apply because Judge Choate's summary judgment order is void based on his required
6  recusal.  Claim 5 is primarily a prayer for relief.  As additional relief, Plaintiff seeks damages,
7  and as to Counts 1 and 2, he seeks to have this Court set aside Judge Polos' denial of the new
8  trial motion.

## II.    LEGAL STANDARD

### A.  The *Younger* Doctrine

In *Younger v. Harris*, 401 U.S. 37, 53-54, 91 S. Ct. 755 (1971), the United States Supreme Court held that, in most circumstances, "Our Federalism" bars a federal court from issuing an injunction against ongoing state criminal proceedings.  When an injunction is barred, an action seeking a declaration that a state statute is unconstitutional is also barred.  *See Samuels v. Mackell*, 401 U.S. 66, 73-74, 91 S. Ct. 764 (1971).  Later cases have expanded the reach of this doctrine.  For example, an injunction should not issue against state proceedings instituted after, as well as before, the commencement of the federal action, if no "proceedings of substance on the merits have taken place in the federal court."  *See Hicks v. Miranda*, 422 U.S. 332, 349, 95 S. Ct. 2281 (1975), *overruled in part on other grounds by Mandel v. Bradley*, 432 U.S. 173, 176, 97 S. Ct. 2238 (1977).  The *Younger v. Harris* doctrine can apply even in civil cases between two private parties, if the state's interests are sufficiently important.  *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12-14 & n.12, 107 S. Ct. 1519 (1987).  Although the exact contours of sufficiently important state interests, when all the litigants are private parties, are not yet known, in *Pennzoil* the Supreme Court stated that "the State's interest in protecting the authority of the judicial system, so that its orders and judgments are not rendered nugatory" was a sufficiently important state interest.  *See id.* at 14 n.12; 107 S. Ct. at 1527 n.12 (internal quotation marks and citation omitted).

As the Ninth Circuit has stated, "[a]bsent 'extraordinary circumstances,' abstention in favor of state judicial proceedings is required if the state proceedings (1) are ongoing, (2) implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims." *Hirsh v. Justices of Supreme Court of State of Cal.*, 67 F.3d 708, 712 (9th Cir. 1995). In addition, "*Younger* principles apply to actions at law as well as for injunctive or declaratory relief because a determination that the federal plaintiff's constitutional rights have been violated would have the same practical effect as a declaration or injunction on pending state proceedings. However, federal courts should not dismiss actions where damages are it issue; rather, damages actions should be stayed until the state proceedings are completed." *Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004). In addition, the Ninth Circuit has receded from its earlier position requiring "direct interference" in state court proceedings as a condition or threshold issue for *Younger* abstention. *Id*. at 977-78.

**B.   The *Colorado River* Doctrine[2]**

Ordinarily, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 1246 (1976). The Supreme Court has long recognized, however, that "the circumstances permitting dismissal of a federal suit due to the presence of a concurrent state court proceeding . . . do nevertheless exist." *Id.* at 818. A federal court's decision whether to dismiss or abstain from a case "rest[s] on considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S. Ct. 219 (1952)).

The Supreme Court and Ninth Circuit have announced several factors a court should consider in making this decision: (1) which court first assumed jurisdiction over the *res* in dispute; (2) the relative convenience of the forums; (3) the need to avoid piecemeal litigation; (4)

---

[2]"Although commonly referred to as an abstention doctrine, the Supreme Court has flatly rejected this categorization." *Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989).

1  the order in which the state and federal actions were filed; (5) whether state or federal law
2  controls; (6) whether the state proceeding is adequate to protect the parties' rights; and (7)
3  whether the federal court proceeding is an instance of forum shopping.  *Colorado River*, 424
4  U.S. at 818 (factors 1-4); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-
5  26, 103 S. Ct. 927 (1983) (factors 5-6); *Travelers Indem. Co. v. Madonna*,  914 F.2d 1364, 1367-
6  68 (9th Cir. 1990) (factor 7).  "These factors are to be applied in a pragmatic and flexible way, as
7  part of a balancing process rather than as a 'mechanical checklist.'"  *American Int'l*
8  *Underwriters, (Phillipines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988)
9  (quoting *Moses Cone*, 460 U.S. at 16).

## III.    DISCUSSION

Defendants CGC and Phelan move to dismiss the entire complaint or stay this entire action pursuant to the *Younger* and *Colorado River* doctrines.  Alternatively, they move to dismiss the defamation claim under Fed. R. Civ. P. 12(b)(6) arguing that such a claim is time-barred under the applicable statute of limitations.  Finally, under the Fed. R. Civ. P. 12(b)(6) or 12(f), they move to strike the fifth cause of action because, rather than a substantive claim, it merely parrots Harrison's prayer for relief.  Because the Court finds that a stay in this matter is appropriate, the Court does not reach the Rule 12(b)(6) and 12(f) arguments.

### A.  *Younger* and *Colorado River* Abstention

Even a cursory reading of the state and federal suits demonstrates that these matters implicate virtually the same facts and raise almost the same legal concerns.  However, the Court recognizes that this matter does not provide a traditional scenario for an application of the *Younger* abstention doctrine.  Indeed, this is a civil case between private individuals.  However, as the federal complaint makes clear, Plaintiff is essentially asking this Court to review state trial court proceedings despite the fact that he has already appealed judgments entered in the state court to the proper state appellate tribunal.  Thus, while he is not asking this Court to enjoin the state appellate court action, by seeking review from this Court, he would seemingly have this Court interfere with ongoing state court proceedings.  And despite asking for a less common application of *Younger* abstention, as stated *supra*, the Supreme Court recognizes an application

1  of *Younger* in civil suits between private parties, and the Ninth Circuit even applies the doctrine
2  to suits seeking damages. *See Gilbertson*, 381 F.3d at 968 ("Paul Douglas Gilbertson, was a
3  land surveyor whose Oregon license to survey was revoked and not reinstated by the State Board
4  of Examiners for Engineering and Land Surveying (the Board). Gilbertson appealed both
5  decisions to the Oregon Court of Appeals. Meanwhile, Gilbertson filed this [federal] action
6  seeking money damages from members of the Board for violating his First Amendment rights,
7  violating his right to due process, and denying him equal protection of the laws. The district
8  court dismissed the action on the basis of *Younger* abstention.").

9       The instant lawsuit meets the three requirements for *Younger* abstention. First of all, the
10 state court proceedings are still ongoing as the appeal is still currently pending. Plaintiff's
11 position that the state proceedings are complete because the trial court is no longer adjudicating
12 the matter misses the mark. The relevant comparison here is between the state appellate court
13 and the instant Court. Second, the state appellate proceedings implicate important state interests.
14 As stated above, "the State's interest in protecting the authority of the judicial system, so that its
15 orders and judgment are not rendered nugatory" is a sufficient state interest for *Younger*
16 abstention. *See Pennzoil Co., supra*. Indeed, Plaintiff primarily asks this Court to reexamine
17 state court proceedings either by setting aside state court judgments or awarding damages based
18 on wrongdoing that occurred during state court trial proceedings. Such a request is more
19 appropriately the province of the state appellate court and infringes on the state judicial system's
20 right to review and enforce its own judgments. Furthermore, Plaintiff's assertion that the state
21 appellate court has abdicated all interests in this matter because it would not allow him to file a
22 brief in excess of the statutory word count is wholly untenable. Third and finally, the state
23 appellate court provides a full and thorough opportunity for Harrison to litigate his claims
24 contending wrongdoing at the trial court level. Indeed, Harrison concedes (and how could he
25 not) that this matter involves no federal questions, let alone any federal constitutional claims. As
26 such, despite the unique context for *Younger* abstention, the Court finds abstention appropriate
27 here. However, as the Ninth Circuit's *Gilbertson* opinion makes clear, a stay (rather than
28 dismissal) is appropriate where damages and not just injunctive relief is sought. As a result (and

1  out of an abundance of caution as this case includes both damages and injunctive-type relief),
2  *Younger* warrants a full stay of this matter.

3  In addition, even if the factual and procedural set-up of this case suggest that *Younger* is
4  not the proper doctrine at issue, the *Colorado River* doctrine warrants abstention here.  As
5  Defendants fully demonstrate, all the applicable factors outlined by the *Colorado River* Court
6  support Defendants' position.  As the preliminary inquiry, the federal action is "substantially
7  similar" to the matter currently pending before the state appellate court. *See Nakash*, 882 F.2d at
8  1416.  As the Ninth Circuit has stated, "[e]xact parallelism is not required. *Id*; *see also*
9  *Fireman's Fund Ins. Co. v. Garamendi*, 790 F. Supp. 938, 964 (N.D. Cal. 1992) ("In keeping
10 with the flexible and pragmatic approach taken to *Colorado River* analysis, the Ninth Circuit has
11 loosened the requirement that the suits pending in state and federal court involve exactly the
12 same parties or the same claims.").  The Court agrees that the presence of Defendant Phelan in
13 the instant lawsuit does not affect the "substantial similarity" conclusion.  Indeed, Phelan is only
14 present in this suit with respect to the abuse of process claim.  In addition, that claim really only
15 contends that Defendants Phelan and CGC should not have sought a protective order in the state
16 proceedings (and implicitly the state court should not have granted the order).  Furthermore, the
17 state trial court's granting of the protective order is one of the many matters currently on appeal,
18 *see, e.g.*, Issues C and E, *supra*.  Thus, that Phelan is not a named defendant in the state court
19 action does not render the matters dissimilar.

20 In addition, that the alleged causes of action and the issues on appeal are not identically
21 phrased also does not undercut the substantial similarity conclusion.  Comparing the substance
22 of the federal claims to the issues on appeal demonstrates their extreme similarity.  In other
23 words, by both proceedings, Plaintiff is attempting to get a review and reversal of the state trial
24 court and to again press is defamation claim.  As simply one example, by his state appeal,
25 Plaintiff asks the appellate court to reverse the trial court's grant of summary judgment based on
26 the statute of limitations and also argues that the judgment is void due to Judge Choate's
27 disqualification.  By his fourth claim for relief in the federal complaint, Harrison realleges his
28 defamation claim (the only claim at issue in the state court summary judgment), argues that the

statute of limitations is tolled, and alleges that claim preclusion does not apply because Judge Choate was disqualified from the proceedings. These claims are indisputably "substantially similar."

Moreover, all the applicable *Colorado River* factors support abstention. First, the state forum is clearly convenient, as Harrison has voluntarily initiated three lawsuits there. Second, continuing with parallel proceedings risks conflicting results. Third, the state court proceedings are further along in adjudication as the matters have been fully briefed and submitted to the state appellate tribunal; no substantive proceedings have taken place in this Court. Fourth, every claim in this action is based on state substantive law. Indeed, the only basis for federal jurisdiction is the diversity of the parties. On a related point, there is no basis to believe that the state court proceedings cannot adequately protect Harrison's rights, especially as he has not raised any federal constitutional claims. In addition, the Court agrees that there is no reason to assume that the state court is at all biased or prejudiced in this matter. The Court simply will not entertain an argument that the state appellate court's refusal to allow Harrison to submit a brief exceeding the statutory page limit evinces any kind of bias. In addition, the Court finds that this matter smacks of forum shopping. There simply is no reason for Harrison to have filed a complaint here when he has substantively raised the same issues upon appeal to the state appellate tribunal and has already brought three cases in state court related to his dispute with CGC and Sherwood. Thus, the requirements for the application of the *Colorado River* doctrine are clearly met in this case.

However, the Supreme Court has not answered "whether a dismissal or a stay should ordinarily be the preferred course of action when a district court finds that *Colorado River* counsels in favor of deferring to a parallel state-court suit." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 28, 103 S. Ct. 927 (1983). However, the Ninth Circuit has counseled district courts to grant stays in lieu of outright dismissals pursuant to *Colorado River*. *See Attwood v. Mendocino Coast Dist. Hosp.*, 886 F.2d 241, 243 (9th Cir. 1989) ("We hold that the district court should have stayed rather than dismissed Attwood's action. This holding ensures that the federal forum will remain open if 'for some unexpected reason that state forum

1  does turn out to be inadequate.'" (quoting *Moses H. Cone Memorial Hosp.*, 460 U.S. at 28)).  In
2  any event, by promoting stays, the Ninth Circuit reasons that stays are functionally equivalent to
3  dismissals with the added safeguard of access to a federal court upon a change in facts.  *See Id.*
4  ("Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court
5  will have nothing further to do in resolving any substantive part of the case, whether it stays or
6  dismisses.") (quoting *Moses H. Cone Memorial Hosp.*, 460 U.S. at 243).  As such, out of an
7  abundance of caution, the Court finds that a stay rather than an outright dismissal is warranted
8  under *Colorado River*.
9        Thus, for the reasons stated above, the Court finds that a stay  pursuant to either
10 the *Younger* or *Colorado River* doctrines is appropriate here.  The Court thus stays this matter in
11 its entirety.

**B.  Additional Concerns Raised by Plaintiff's Pleadings**

13      Defendants do not argue or even raise the *Rooker-Feldman* doctrine in their briefing and
14 request for abstention.  Under the *Rooker-Feldman* doctrine, a federal district court may not
15 serve as an appellate tribunal to review allegedly erroneous state court judgments.  *Dist. of*
16 *Columbia Ct. App. v. Feldman*, 460 U.S. 462, 476, 103 S. Ct. 1303 (1983); *Rooker v. Fidelity*
17 *Trust Co.*, 263 U.S. 413, 415-16, 44 S. Ct. 149 (1923).  This doctrine is "based on the statutory
18 proposition that federal district courts are courts of original, not appellate jurisdiction."  *In re*
19 *Sasson*, 424 F.3d 864, 871 (9th Cir. 2005).  "Therefore, federal district courts have 'no authority
20 to review the final determinations of a state court in judicial proceedings.'" *Id.* (quoting
21 *Worldwide Church of God v. McNair*, 805 F.2d 888, 890 (9th Cir. 1986)).  However, as the
22 Supreme Court has made clear, the doctrine is narrow, "confined to cases of the kind from which
23 the doctrine acquired its name: cases brought by state-court losers complaining of injuries
24 caused by state-court judgments rendered before the district court proceedings commenced and
25 inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi*
26 *Basic Indus. Corp.*, 544 U.S. 280, 283, 125 S. Ct. 1517 (2005); *accord Lance v. Dennis*, 546
27 U.S. 459, 126 S. Ct. 1198, 1201 (2006).
28

Some, though not all, of Plaintiff's claims for relief ask that this Court set aside and vacate rulings made by the state trial court.  Thus, the *Rooker-Feldman* doctrine seemingly presents another obstacle to the Court hearing this matter.  The Court recognizes that there is a distinction between actually asking it to vacate a state court order (implicating *Rooker-Feldman*) and seeking to relitigate claims already raised and adjudicated in state court (implicating the doctrines of claim and issue preclusion).   For example, Claims 1 and 2 expressly ask the Court to set aside an order rendered by Judge Polos, clearly raising *Rooker-Feldman* concerns.  Claim 3 does not expressly ask the instant Court to set aside a state court judgment and is fashioned as a damages claim only; however, as the Court reads the claim, it basically asks the Court to review Judge Choate's decision to issue a  protective order.  Put differently, though the claim is only directed at CGC and Phelan, Plaintiff does not claim that a fraud was committed on the court.  Instead, by arguing that CGC and Phelan should never have sought a protective order in the first place, Plaintiff essentially asks this Court to look in to the propriety of Judge Choate's decision and review that decision on the merits.  Thus, this claim too implicates *Rooker-Feldman*.  In contrast, Claim 4, Harrison's defamation claim, primarily raises claim and issue preclusion concerns, a point acknowledged by Plaintiff's federal complaint as he attempts to plead around those doctrines.

However, with the parties not raising the issue (especially in light of the pro se Plaintiff not yet having an opportunity to respond to these concerns)  and the Court otherwise staying this matter, the Court will not reach this issue by the instant order.  Indeed, the issue may never arise if Plaintiff obtains the relief he seeks from the state appellate court.  Instead, to the extent this case returns to the Court's active docket and is otherwise not fully resolved by the state appeal, the parties will need to address this matter as a threshold concern before any further proceedings take place.

In addition, the Court refrains from ruling on the Sherwood Motion related to dismissal for ineffective service of process.  First, as the Court decides to stay this matter in its entirety and the state appeal may render any further proceedings unnecessary, such a ruling wastes judicial resources.  Furthermore, not only does the docket reflect a newly submitted proof of service on

1 Sherwood, the Court also points out that Harrison has 120 days to perfect service of process.
2 Thus, a request that this matter be dismissed *with prejudice* for improper service is ill-founded.
3 However, out of an abundance of caution, the Court will hold the Sherwood Motion in abeyance
4 pending the stay.

**IV.     DISPOSITION**

For the foregoing reasons, the Court hereby STAYS this matter pending the completion of the state appellate court proceedings and holds the Sherwood Motion in abeyance. The parties are to inform the Court in writing no later than ten (10) days after the state appellate court issues a ruling. All pending hearing dates are now VACATED.

IT IS SO ORDERED

DATED: October 9, 2009                    _____
                                          DAVID O. CARTER
                                          United States District Judge